HARLEY (MOORE v.). See Case No. 9,764.

HARLEY (OREN v.). See Case No. 10,567.

---

## Case No. 6,070.

### In re HARLOW.

[10 N. B. R. 280.] [1]

### District Court, D. Maine. 1874.

BANKRUPTCY—PLEDGE—WAIVER OF LIEN BY SURRENDER.

H., the bankrupt, was indebted to R. for rent of store and otherwise, and in order to secure the debt, gave R. an absolute bill of sale of a silver cornet, which musical instrument he delivered to R., telling him he could hold it as long as he stayed on the premises and until the rent was paid. Subsequently H. borrowed the cornet to use, and agreed to return it after using it, but had the exclusive possession of it several months before he went into bankruptcy. On petition of R. to have his lien upon the cornet enforced, etc., *held*, that he had waived and surrendered whatever right he might otherwise have had under the bill of sale: that the transaction was a pledge and not a mortgage.

By CHARLES HAMLIN, Register:

The petitioner, Ramsdell, has filed his petition before the court, alleging, in substance, that he rented, October 1, 1871, to said bankrupt, the westerly half of his store, No. 3 Kendusheag Bridge, Bangor, to be used as a jeweler's shop, at the annual rent of five hundred dollars, to be paid in monthly installments of forty-one dollars and sixty-seven cents each, as fast as the same should become due; that the bankrupt became his tenant, as aforesaid, and remained such tenant up to the time of his filing his petition in bankruptcy, viz., August 13, 1873. He also alleges, that the rent was not paid according

1 [Reprinted by permission.]

to the stipulated terms, but that the bankrupt suffered it to run in arrear, until the 1st of June, 1872, when it amounted to one hundred and fifty dollars, or nearly four months rent; and that he then owed the petitioner besides, on account of certain fixtures, fourteen dollars more; and that the bankrupt, June 5, 1872, executed and delivered to the petitioner an absolute bill of sale of a certain silver cornet with gold trimmings, valued at three hundred and fifty dollars, and thereupon delivered the cornet into the hands and possession of the petitioner, to be held as security, as well for whatever thereafter might be due, on account for rent and otherwise, as for what was then due for rent and on account, which bill of sale and cornet was accepted and received and delivered as aforesaid; and that the bankrupt afterwards borrowed the cornet, to use on some special occasion, agreeing to return it immediately after to the petitioner, since which time he has been unable to obtain possession of the same. The prayer of the petition, after reciting the proceedings in bankruptcy, and stating that petitioner's claim against the estate amounts to three hundred and forty-five dollars and seven cents, asks, that his rights under and by virtue of said bill of sale may be adjusted and secured, to the end that his claim against the bankrupt's estate may be satisfied, etc. The assignee having been duly notified of the pendency of this petition, the court thereupon ordered the same to be referred to the register to investigate and report upon the facts and his conclusion as to the rights of the parties in the matter. A hearing has been had of parties. The assignee filed his answer to the petition, and in the answer sets up for his defense: First, that the bill of sale is fraudulent and void against the assignee, because it was made for the express purpose, between the bankrupt and this petitioner, of being a fictitious and colorable sale or transfer of said instrument, and to secure and save the same from attachment, or liability to attachment, as the property of the bankrupt, who was then largely in debt, unable to meet his payments, and threatened with suits and attachments; second, that the petitioner has fully surrendered and effectually waived whatever right or interest he had to the instrument or cornet by or through the bill of sale; and third, that any liability which at any time may have subsisted on the part of the bankrupt to the petitioner by virtue of the bill of sale has been fully discharged and paid in money and goods. Testimony of the petitioner, bankrupt, and other witnesses, was adduced on all of the questions thus raised, and an examination had of their accounts and other documentary evidence, all of which appear in the depositions returned to court.

The case, as disclosed upon the petitioner's showing, is found almost entirely in the first part of his deposition, pp. 1 and 2. There is no controversy between the parties but that the bankrupt became the petitioner's tenant October 1, 1871, at the agreed rent of five hundred dollars per annum, nor of the execution of the bill of sale, which is as follows: "Bangor, June 5, 1872. J. W. Ramsdell bought of A. D. Harlow one gold and silver instrument. $350.00. Received payment, A. D. Harlow."

The petitioner says, in answer to the (2) question, "When and where was the bill of sale given, and for what purpose?" that "It was given at my store, at the date it purports to be given. It was given to secure me on rent of the west half or side of my store while he (the bankrupt) remained in there." And in answer to the question (3) "How the bankrupt happened to secure him in this way, and whether the cornet was delivered, etc.," he testifies: "I spoke to him frequently about rent. He was some three or four hundred dollars behind hand and kept promising to pay me so and so, but failed to do so. I asked him if he would secure me on that instrument? He said he would, and produced the bill of sale. He delivered it up to me and I put it in my safe. He was to pay me five hundred dollars per annum rent. It began on October 1, 1871. Directly after he gave me the bill of sale he asked me if he could borrow the instrument to use on the street. I told him he could if he would return it to me again, as soon as he had got done with it. He used it several times and returned it to me again as soon as he had got done with it. Have not had it in my possession since last May, I think. He has kept it since. He gave me the bill of sale at the time I requested him to give me security on the instrument. Couldn't say that any one else was present." In answer to the (4) question, "Whether the bankrupt owed him on account aside the rent, and what was said about securing that as well as the rent," he says: "He was owing me a small account besides the rent. * * * It was not mentioned at the time he gave me the bill of sale whether it was for security on the other account besides the rent. I presented my bill against him for the rent he owed me, and the security was for what he owed me. He said, I could hold the instrument as long as he stayed there and until the rent was paid." The petitioner has treated his case as one of an equitable mortgage in his argument, and claims that between himself and the assignee there is no necessity of retaining possession of the property mortgaged, nor recording the bill of sale; but the transaction, as stated in his petition and testimony, shows it to be a pledge and not a mortgage. The distinction between a mortgage and a pledge will always be observed both in equity and law. A slight examination of the testimony of the petitioner will show, first, there was no

condition of defeasance (4 Kent, Comm. 138), and, second, there was no fixed time within which the debt was to be paid and the property redeemed thereby (Cortelyou v. Lansing, 2 Caines, Cas. 200). Ramsdell distinctly states, near the close of his answer to the fourth question, that at the time of the execution of the bill of sale the bankrupt said "he could hold the instrument as long as he stayed there and until the rent was paid." There is no evidence to indicate when the rent was to be paid, or when it was necessary for the bankrupt to redeem the property, in order to prevent the petitioner's interest from becoming absolute. Third. There is nothing in the evidence tending to show that the petitioner has more than a special property in the cornet. He held it as security until it should be relieved by the payment of rent, and there is nothing to indicate how long, if the rent was not paid, it would take for the property to become petitioner's absolutely; or that the whole legal title passed, or was intended to pass, to the petitioner, as in the case of a mortgage. In order to make a mortgage out of the transaction, it is incumbent on the petitioner to show that it is more than a pledge, and that the legal title passed to him, and this he has not done. As is said by the court in Jones v. Baldwin, 12 Pick. 319, "there is no evidence to show that the transaction was intended as a mortgage rather than a pledge, and it cannot so operate unless it can be made to appear that it was the intention of the parties that the legal property should pass, liable to be defeated by the performance of the condition." In this case the transaction was held to be a pledge. See, also, Hazard v. Loring, 10 Cush. 267, and Newton v. Fay, 10 Allen, 505. Finally, it appearing that the petitioner having voluntarily surrendered the possession of the pledged property into the hands of the bankrupt months before the proceedings in bankruptcy were instituted, must be held to have waived his lien and takes nothing by this petition. In re Mitchell [Case No. 9,657].

No opinion is given on the other questions raised.

FOX, District Judge. The court having read all the testimony taken before the register, and the arguments of counsel and the report of the register, doth order and decree that the petition of said John W. Ramsdell be dismissed, he having relinquished and surrendered any right he might otherwise have had to the cornet under the bill of sale to him from the bankrupt, bearing date June 5, 1872, but without costs to either party.